IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William R. Parke & Margaret V. Parke, : | |
| : | CHAPTER THIRTEEN |
| Debtors : | Case No. 1:07-bk-00322 |
| _____: | _____ |
| : | |
| Charles J. DeHart, III, : | |
| Standing Chapter 13 Trustee, : | |
| : | |
| Movant : | |
| v. : | {**Nature of Proceeding:** Chapter 13 |
| : | Trustee's Objection to Confirmation} |
| William R. Parke & Margaret V. Parke, : | |
| : | |
| Respondents : | |

**OPINION**[1]

Presently pending before the Court is the Standing Chapter 13 Trustee's Objection to confirmation of William and Margaret Parke's proposed Plan.

The Parkes are above median Debtors with at least $1,428.00 a month in disposable income.[2] The Plan as proposed pays $340.00 for 60 months and provides for 100% of the unsecured debt listed on their schedules totaling $15,914.81. The Trustee has objected to the Plan on the grounds that failure to commit all disposable income as it becomes available constitutes bad faith under 11 U.S.C. §1325(a)(3). The Debtors counter that their Plan should be confirmed given that it complies with §1325(b)(1)(A), and argue that the Trustee is impermissibly bootstrapping the requirements of §1325(b)(1)(B) to the good faith requirements

---

[1]This Opinion was drafted with the assistance of Kathryn F. Evans Esq., Law Clerk.

[2]This number was derived from the Debtors' Schedules I and J (Schedule I shows a combined average monthly income of $7,445.72 and Schedule J shows expenses of $6,017.51). (See Doc. No. 1 to Case Number 1-07-bk-00322). Debtors' B22C notes a disposable income of $2,586.39. *Id*. The fact that the Court is choosing to use the I & J number as opposed to the B22C number is of no legal consequence for purposes of deciding this case.

June 8, 2007 (1:32pm)                    -1-

of §1325(a)(3). For the reasons stated herein, the Plan fails to satisfy §1325(b)(1)(A) given that no post-petition interest is specifically provided to the unsecured creditors, and confirmation is hereby denied.

**Analysis**

In order to be confirmed, a plan must comply with all requirements of 11 U.S.C. §1325(a). Additionally, if the trustee or the holder of an allowed unsecured claim objects to confirmation, then the burden is heightened and the plan must also comply with §1325(b)(1)(A) or (B). 11 U.S.C. §1325(B)(1); *In re Fries,* 68 B.R. 676, 682 (Bankr. E.D.Pa. 1986) and *In re Smith*, 100 B.R. 436, 441 (Bankr. S.D.Ind. 1989).

The Trustee has objected on grounds of bad faith under §1325(a)(3); bad faith analysis is governed by the totality of the circumstances standards established in *In re Lilley*, 91 F.3d 491 (3d Cir. 1996). The totality of the circumstances test is a fact intensive case by case analysis. *Id*[3]. No testimony was presented in this case and a second evidentiary hearing would be necessary prior to any decision based on §1325(a)(3). However, the Court is mindful of the interests of judicial economy and the need to have prompt decisions, especially in the bankruptcy context. "While the reduction of unnecessary delays, expense and duplications of effort are important in all judicial proceedings, they are especially important in bankruptcy cases. The economic fragility of the bankrupt's estate, the excess of creditors' demands over debtor's assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding." *In re T.D.M.A., Inc.,* 66 B.R. 992, 996 (Bankr. E.D.Pa. 1986).

---

[3]*Lilley* adopted the Seventh, Ninth and Tenth Circuits' holding that good faith should be "assessed on a case-by-case basis in light of the totality of the circumstances." *In re Lilley*, 91 F.3d 491 at 4996. The court then went on to discuss factors that primarily centered around the debtor's conduct, including his motives, and whether he was forthcoming with his creditors. *Id.*

Case 1:07-bk-00322-RNO    Doc 25    Filed 06/08/07    Entered 06/08/07 15:13:48    Desc
Main Document      Page 2 of 7

Further, the Third Circuit has held that bankruptcy courts have the independent duty to see that chapter 13 plans meet the confirmation requirements. *In re Szostek*, 886 F.2d 1405, 1414 (3d Cir. 1989) ("the court itself has a responsibility to determine whether a debtor's plan meets Code requirements"). Therefore, coupling the need for judicial economy in the bankruptcy context and the Court's independent responsibility to review all chapter 13 plan confirmations, the Court will decide the matter solely on the basis of whether the subject plan meets either of the requirements of §1325(b)(1)(A) or (B).

Section 1325(b)(1) states:

> . . . the court may not approve the plan unless, as of the effective date of the plan-
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; <u>or</u>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. §1325(b)(1). (emphasis added).

The statute is a disjunctive test given that the word "or" separates the alternate choices of subsections (A) or (B). See *U.S. v. Urban*, 140 F.3d 229, 233 (3d Cir. 1998) (the word "or" is grammatically interpreted as a disjunctive term). "[C]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise." *Id.* citing *(U.S. v. 6109 Grubb Road,* 886 F.2d 618, 626 (3d Cir. 1989) quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)).

Therefore, in order to overcome the Trustee's objection, the Debtors must establish compliance with only one of the above subsections of §1325(b)(1). The Debtors do not dispute that they have not complied with subsection (B) given that their Plan does not provide for all disposable income to be received in the applicable commitment period. Trial Tr. vol. 1, 1-2,

Case 1:07-bk-00322-RNO Doc 25 Filed 06/08/07 Entered 06/08/07 15:13:48 Desc Main Document Page 3 of 7

April 26, 2007. Therefore, the question remains does the Debtors' Plan as proposed satisfy §1325(b)(1)(A)?

Section 1325(b)(1) uses the language "value . . . as of the effective date of the plan," as the measuring point for the valuation of the payments to creditors. The interpretation of this phrase calls into play two of the cardinal canons of statutory construction. First, that statutory construction is a "holistic endeavor";[4] and, second, that "identical words used in different parts of the same act are intended to have the same meaning."[5] The phrase "value . . . as of the effective date of the plan" appears in the Bankruptcy Code eighteen times,[6] and, thus, the Court shall look to other precedential interpretations of those sections for guidance. The Supreme Court has interpreted the above language, as found in §1325(a)(5)(B)(ii), to incorporate the principle of the time value of money. *Till v. SCS Credit Corp.*, 541 U.S. 465, 467, 124 S.Ct. 1951 (2004).

> "Present value" or the "time value of money" is not a legal concept, but rather it is a term of art in the financial community. It simply means that a dollar received today is worth more than a dollar to be received in the future. To compensate the creditor for not receiving its money today, the debtor is charged an additional amount of money. The charge is based on a rate of interest called a "discount rate." The discount rate is used to calculate how much the creditor should be paid so it will have the same amount of money in the future as it would have had if it did not have to wait to be paid. *In re Szostek,* 886 F.2d 1405, 1406 at n.1 (3d Cir. 1989) quoting *In re Fisher,* 29 B.R. 542 (Bankr. D.Kan. 1983).

In this case, the Debtors, with excess disposable income, have chosen to stretch out their

---

[4]*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630 (1988).

[5]*Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2504 (1990) quoting *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986).

[6]See, §1129 (phrase is repeated 8 times); §1141(d)(5)(b)(I); §1173(a)(2); §1225 (phrase is repeated 3 times); §1228(b)(2); §1325 (phrase is repeated 3 times); and, §1328(b)(2).

Case 1:07-bk-00322-RNO    Doc 25    Filed 06/08/07    Entered 06/08/07 15:13:48    Desc
Main Document      Page 4 of 7

payments under the Plan. The Court believes this is analogous to a chapter 7 surplus case. In such a case, §726(a)(5) provides for payment of interest on creditors' claims. Therefore, the Court finds that to comply with the requirements of §1325(b)(1)(A), a plan must pay out more than 100% of the allowed unsecured claims. Where the payment will be over time, the plan must also provide for post petition interest to be paid out on those claims.

What then is the applicable rate of interest? The Court finds guidance in the Eastern District of Pennsylvania case, *In re Chiapetta,* 159 B.R. 152 (Bankr. E.D.Pa. 1993). In that case, Judge Scholl noted:

> Bankruptcy gives all creditors what amounts to a judgment against the debtor as of the filings date. 11 U.S.C. §502(a). In all other judgment situations, the interest rate is calculated [utilizing the federal rate] as of the date of judgment-- i.e., the date when the obligation was created . . . since a claim is like a judgment entered at the time of the bankruptcy filing, the applicable rate should be the federal judgment rate in effect at the time of the bankruptcy filing. *In re Chiapetta*, 159 B.R. 152, 160-161 (Bankr. E.D.Pa. 1993) (internal citations omitted).

The *Chiapetta* analysis considered the propriety of applying the federal judgment rate[7] of interest to claims by unsecured creditors of a solvent debtor under §726(a)(5). Other courts have used the federal judgment interest rate in the context of awarding post-petition interest in the bankruptcy forum. See *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) (unsecured creditor was entitled to federal judgment rate of interest when the chapter 11 debtor was solvent); *In re Dow*

---

[7]The federal judgment rate of interest is found in Title 28 U.S.C. §1961(a), which provides:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

June 8, 2007 (1:32pm)  -5-

*Corning Corp,* 244 B.R. 678 (Bankr. E.D.Mich.N.Div. 1999) (best interest of creditors test requires the creditors of a solvent chapter 11 estate to receive post petition interest at a rate at least equal to the federal statutory rate); *In re Godsey*, 134 B.R. 865 (Bankr. M.D.Tenn. 1991) (federal judgment rate should be used to determine interest creditors in a chapter 7 case are entitled to in a surplus bankruptcy case); and *In re D.W.G.K. Restaurants,* 106 B.R. 194 (Bankr. S.D.Cal. 1989) (chapter 11 debtor's counsel entitled to interest at federal judgment rate on attorneys fees previously awarded but unpaid). The Court finds that the instant case is factually equivalent to a chapter 7 surplus case, or a solvent chapter 11 debtor and, therefore, the applicable rate of interest to be paid to the allowed unsecured creditors in order to satisfy the valuation requirements of §1325(b)(1)(A) is the federal judgement rate of interest.

The federal judgment interest rate as of February 5, 2007 (the date of the petition) was 5.10%. Omnibus Appropriation Act Amendments of 2000, Pub. L. 106-554, 114 Stat. 2763 (codified as amended at 28 U.S.C. §1961).[8] The Plan here proposes "payments of $340.00 per month for 60 months or until such time that the Trustee pays the sum of 100% to all unsecured creditors with timely filed and allowed claims." Doc. No. 3 to Case Number 1-07-bk-00322, ¶1(b). However, the language of the Plan only states that the creditors are entitled to 100% of their "timely filed allowed claims." The language in the Plan does not specifically indicate that interest on creditors' claims will be paid, and the Court is wary to confirm a plan under §1325(b)(1)(A) wherein the plan does not specifically indicate the unsecured creditors are entitled to interest at the federal judgment rate.

Therefore, because the Court finds the Plan does not contain language specifically

---

[8]The federal judgment interest rate numbers are also available at http://www.federalreserve.gov/releases/H15/Current (follow to "Historical data" hyperlink; then follow "Weekly (Friday)" hyperlink under "Treasury constant maturities 1-year").

June 8, 2007 (1:32pm)                                  -6-

providing interest to the claims of the unsecured creditors, it does not meet the requirement of §1325(b)(1)(A). Thus, confirmation will be denied, and an amended plan must be filed within 30 days. An Order will be entered consistent with this Opinion.

Date: June 8, 2007

Robert N. Opel, II, Bankruptcy Judge
(BI)

*This opinion is electronically signed and filed on the same date.*

Case 1:07-bk-00322-RNO Doc 25 Filed 06/08/07 Entered 06/08/07 15:13:48 Desc Main Document Page 7 of 7